# CHOATE, HALL & STEWART LLP

EXCHANGE PLACE

53 STATE STREET

BOSTON, MASSACHUSETTS 02109-2804

T (617) 248-5000    F (617) 248-4000

www.choate.com

CHRISTOPHER EDWARDS
DIRECT DIAL: (617) 248-52:1
EMAIL: CEDWARDS@CHOATE.COM

May 10, 2005

**BY HAND**

Clerk of Court
United States District Court
    for the District of Massachusetts
United States Courthouse
One Courthouse Way
Boston, MA  02210

      RE:    Massachusetts Port Authority v. RLI Corporation

Dear Sir or Madam:

      Enclosed for filing in accordance with Local Rule 81.1, please find the certified copies of records, proceedings and docket entries from the Commonwealth's Suffolk Superior Court in the matter of Massachusetts Port Authority v. RLI Corporation, et al., Civil Action No. 05-1361.

      Please acknowledge receipt of these documents by date-stamping the enclosed copy of this letter and returning it to me via the waiting messenger.

      Thank you for your assistance.

                Sincerely,

                Christopher Edwards

Enclosures
3923095_1.DOC

cc:    Mark D. Cahill, Esq.
        Beth I.Z. Boland, Esq. (*w/enc., by hand delivery*)

3923095v1

*Suffolk Superior Civil # 05-1361*

COPY

SUFFOLK SUPERIOR COURT
CIVIL CLERK'S OFFICE

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

2005 MAY -4 P 4: 31

MICHAEL JOSEPH CONOVAN
CLERK/MAGISTRATE

MASSACHUSETTS PORT AUTHORITY,

Plaintiff,

05 10924 MLW

v.

CIVIL ACTION NO: _____

RLI CORPORATION and
RLI INSURANCE COMPANY,

Defendants.

)
)
)
)
)
)
)
)
)
)
)

I hereby certify on _____ that the
foregoing document is true and correct copy of the
☐ electronic docket in the captioned case
☐ electronically filed original filed _____
☒ original filed in my office on _____

Sarah A. Thornton
Clerk, U.S. District Court
District of Massachusetts

By: _____
Deputy Clerk

**PETITION FOR REMOVAL**

In accordance with 28 U.S.C. §§ 1332, 1441 and 1446, Defendants RLI Corporation and RLI Insurance Company hereby petition this Court to remove the above-captioned action from the Superior Court of the Commonwealth of Massachusetts for Suffolk County to the United States District Court for the District of Massachusetts. As grounds for removal, Defendants state as follows:

1.      On April 7, 2005, Plaintiff Massachusetts Port Authority ("Massport") filed a civil action against the Defendants in the Superior Court of the Commonwealth of Massachusetts for Suffolk County, entitled *Massachusetts Port Authority v. RLI Corporation and RLI Insurance Company,* Civil Action No. 05-1361 ("the State Court Action"). Copies of all process, pleadings and orders served on Defendants in the State Court Action are attached to this Petition as Exhibit A.

2.      The Complaint in the State Court Action was filed with the Clerk of Courts for the Court of the Commonwealth of Massachusetts for Suffolk County on April 7, 2005. A copy of the Complaint is included in Exhibit A.

3920442v1

3.    Defendants were served with the Complaint on April 8, 2005 (although the suit papers were not received at the Defendants' Illinois headquarters until April 12, 2005). As required by 28 U.S.C. § 1446(b), this Petition is filed within 30 days after service of process.

4.    This action may be removed to this Court in accordance with 28 U.S.C. §§ 1332 and 1441, because the action involves a controversy between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.    As alleged in the Complaint, Plaintiff is an independent public authority of the Commonwealth of Massachusetts with its principal place of business at One Harborside Drive, Suite 200S, East Boston, Massachusetts 02128.

6.    Defendant RLI Corporation is a corporation organized under the laws of Illinois with its principal place of business in Illinois.

7.    Defendant RLI Insurance Company is a corporation organized under the laws of Illinois with its principal place of business in Illinois.

8.    In accordance with Local Rule 81.1(a), Defendants will file certified or attested copies of all records and proceedings in the State Court Action and certified or attested copies of all docket entries therein, including a copy of this Petition for Removal, with this Court within thirty (30) days after filing this Petition.

9.    In accordance with 28 U.S.C. § 1446(d), a copy of this Petition for Removal and a Notice of Removal will be served by messenger this day upon Plaintiff's counsel and will also be sent by messenger this day to the Suffolk Superior Court for filing.

WHEREFORE, Defendants RLI Corporation and RLI Insurance Company respectfully

request that this action be removed to the United States District Court for the District of

Massachusetts.

Respectfully Submitted,

RLI CORPORATION AND
RLI INSURANCE COMPANY
By their attorneys,

Mark D. Cahill (BBO# 544693)
Michael P. Mullins
Christopher A. Edwards (BBO# 640758)
CHOATE, HALL & STEWART
Exchange Place, 53 State Street
Boston, MA 02109-2804
Tel: (617) 248-5000
Fax: (617) 248-4000

Dated: May 4, 2005

I HEREBY CERTIFY THAT A TRUE COPY OF
THE ABOVE DOCUMENT WAS SERVED
UPON THE ATTORNEY OF RECORD FOR
EACH OTHER PARTY BY MAIL/HAND ON: 5/4/05

3920442v1                                          3

**COMMONWEALTH OF MASSACHUSETTS**

**SUFFOLK, SS.**

**SUPERIOR COURT
DEPARTMENT OF
THE TRIAL COURT**

MASSACHUSETTS PORT AUTHORITY,      )
                                    )
        Plaintiff,            )
                                    )
    v.                              )     CIVIL ACTION NO: 05-1361
                                    )
RLI CORPORATION and                 )
RLI INSURANCE COMPANY,              )
                                    )
        Defendants.           )

**NOTICE OF REMOVAL**

PLEASE TAKE NOTICE that, in accordance with 28 U.S.C. §§ 1332, 1441 and 1446,

Defendants RLI Corporation and RLI Insurance Company have filed a Petition for Removal in

the United States District Court for the District of Massachusetts, a certified copy of which is

attached hereto.

                              Respectfully Submitted,

                              RLI CORPORATION AND
                              RLI INSURANCE COMPANY
                              By their attorneys,

                              Mark D. Cahill (BBO# 544693)
                              Michael P. Mullins
                              Christopher A. Edwards (BBO# 640758)
                              CHOATE, HALL & STEWART
                              Exchange Place, 53 State Street
                              Boston, MA 02109-2804
                              Tel: (617) 248-5000
                              Fax: (617) 248-4000

Dated: May 4, 2005

I HEREBY CERTIFY THAT A TRUE COPY OF
THE ABOVE DOCUMENT WAS SERVED
UPON THE ATTORNEY OF RECORD FOR
EACH OTHER PARTY BY MAIL/HAND ON: 5/4/05

3920442v1

**Commonwealth of Massachusetts**
**SUFFOLK SUPERIOR COURT**
**Case Summary**
**Civil Docket**

# SUCV2005-01361
## Mass Port Authority v RLI Corp et al

| | | | | |
|---|---|---|---|---|
| **File Date** | 04/07/2005 | **Status** | Disposed: transfered to other court (dtrans) | |
| **Status Date** | 05/05/2005 | **Session** | BLS2 - CtRm 1017, 3 Pemberton Square, Boston | |
| **Origin** | 1 | **Case Type** | BE1 - Fraud, business torts, etc | |
| **Lead Case** | | **Track** | B | |

| | | | |
|---|---|---|---|
| **Service** | | **Answer** | **Rule12/19/20** |
| **Rule 15** | | **Discovery** | **Rule 56** |
| **Final PTC** | | **Disposition** | **Jury Trial**   Yes |

### PARTIES

**Plaintiff**
Mass Port Authority
Active 04/07/2005

**Private Counsel 553654**
Beth I Z Boland
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110-1726
Phone: 617-951-8000
Fax: 617-951-8736
Active 04/07/2005 Notify

**Private Counsel 649704**
Neil McGaraghan
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110
Phone: 617-951-8000
Fax: 617-951-8736
Active 04/07/2005 Notify

**Defendant**
RLI Corp
Served: 04/08/2005
Served (answr pending) 04/26/2005

**Private Counsel 544693**
Mark D Cahill
Choate Hall & Stewart
53 State Street
Exchange Place
Boston, MA 02109-2891
Phone: 617-248-5000
Fax: 617-248-4000
Active 05/04/2005 Notify

**Private Counsel 640758**
Christopher A Edwards
Peabody & Arnold
30 Rowes Wharf
6th Floor
Boston, MA 02110
Phone: 617-951-2100
Fax: 617-951-2125
Active 05/05/2005 Notify

**Commonwealth of Massachusetts**
**SUFFOLK SUPERIOR COURT**
**Case Summary**
**Civil Docket**

## SUCV2005-01361
## Mass Port Authority v RLI Corp et al

| Defendant | Private Counsel 544693 |
|---|---|
| RLI Ins Co | Mark D Cahill |
| Served: 04/08/2005 | Choate Hall & Stewart |
| Served (answr pending) 04/26/2005 | 53 State Street |
| | Exchange Place |
| | Boston, MA 02109-2891 |
| | Phone: 617-248-5000 |
| | Fax: 617-248-4000 |
| | Active 05/04/2005 Notify |
| | |
| | **Private Counsel 640758** |
| | Christopher A Edwards |
| | Peabody & Arnold |
| | 30 Rowes Wharf |
| | 6th Floor |
| | Boston, MA 02110 |
| | Phone: 617-951-2100 |
| | Fax: 617-951-2125 |
| | Active 05/05/2005 Notify |

### ENTRIES

| Date | Paper | Text |
|---|---|---|
| 04/07/2005 | 1.0 | Complaint (Business) filed with special civil action cover sheet |
| 04/07/2005 | | Origin 1, Type BE1, Track B. |
| 04/07/2005 | 2.0 | Civil action cover sheet filed |
| 04/07/2005 | 3.0 | Plaintiff Mass Port Authority's MOTION for appointment of special process server Beacon Hill Reseach & Service Group Inc - Filed & Allowed (vanGestel,J) |
| 04/13/2005 | 4.0 | Notice of Acceptance Into Business Litigation Session: (Allan vanGestel, Justice) Notice sent 4/14/05 |
| 04/26/2005 | 5.0 | SERVICE RETURNED:  RLI Corp(Defendant) (in hand) |
| 04/26/2005 | 6.0 | SERVICE RETURNED:  RLI Ins Co(Defendant) (in hand) |
| 05/03/2005 | 7.0 | Stipulation  to extend time to file answer to & including   May 23, 2005 |
| 05/04/2005 | | Certified copy of petition for removal to U. S. Dist. Court of Defts. RLI Corporation and RLI Insurance Company U. S. Dist.#(05-10924MLW). |
| 05/05/2005 | | Case REMOVED this date to US District Court of Massachusetts |

### EVENTS

I HEREBY ATTEST AND CERTIFY ON

MAY 6, 2005 , THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY:

ASSISTANT CLERK.

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                                    SUPERIOR COURT
                                               DEPARTMENT OF THE
                                               TRIAL COURT

MASSACHUSETTS PORT AUTHORITY,            )
                                         )
                    Plaintiff,           )
                                         )
        v.                               )
                                         )      CIVIL ACTION
RLI CORPORATION,                         )      NO.
RLI INSURANCE COMPANY,                   )
                                         )
                    Defendants.          )
                                         )
                                         )

## COMPLAINT

The Massachusetts Port Authority ("Massport") brings this action for money damages arising out of the defendants' (collectively referred to herein as "RLI") bad faith, fraudulent refusal to honor insurance coverage obligations under a $482 million builder's risk insurance policy covering ongoing construction at and around Logan International Airport. RLI's refusal to honor contractual and fiduciary obligations to Massport caused Massport to incur substantial additional costs to replace the policy.

## PARTIES

1.    Plaintiff Massport is an independent public authority of the Commonwealth of Massachusetts, with a principal place of business at One Harborside Drive, Suite 200S, East Boston, Massachusetts 02128.

2.    On information and belief, defendant RLI Corporation is a publicly owned corporate entity organized under the laws of Illinois, with a principal place of business at 9025 North Lindbergh Drive, Peoria, Illinois, 61615, and a usual place

of business at 3 Center Plaza, Suite 450, 4th Floor, Boston, Massachusetts 02108.

3.     On information and belief, defendant RLI Insurance Company is a wholly owned subsidiary of RLI Corporation, organized under the laws of Illinois, with a principal place of business at 9025 North Lindbergh Drive, Peoria, Illinois, 61615, and a usual place of business at 3 Center Plaza, Suite 450, 4th Floor, Boston, Massachusetts 02108.

## JURISDICTION AND VENUE

4.     The court has jurisdiction over the defendants pursuant to M.G.L. c. 223A § 3(a) – (d) and (f).

5.     Venue is proper pursuant to M.G.L. c. 223 § 1.

## FACTS

### A.     Background

6.     In 1995, Massport commenced an ambitious project ("Logan Modernization") to modernize Logan International Airport ("Logan"). Among other things, Logan Modernization entails a series of construction projects (together, the "Projects") intended to improve and expand various facilities and structures at Logan.

7.     To insure itself against certain liabilities that might arise in connection with construction of the Projects, Massport asked its then-insurance broker, Marsh USA, Inc. ("Marsh"), to obtain for Massport a builder's risk insurance policy with limits of nearly $500 million.

8.     To place the policy, Marsh sought competitive bids from a number of insurance carriers, including RLI.

9.     RLI submitted a bid to underwrite a builder's risk policy for the Logan Modernization Projects. Among other things, RLI represented that it had sufficient capacity to underwrite a policy with limits at or near the $500 million Massport needed.

- 2 -

10.    Massport ultimately selected RLI to underwrite the builder's risk policy.    In or about July 2000, RLI issued a builder's risk policy number RBL0001094 (the "Policy") insuring Massport against certain losses in connection with the Logan Modernization Projects. A copy of the Policy is attached hereto as Exhibit A.

11.    After the Policy was placed with RLI, Massport retained a new insurance broker, the company now known as Hilb Rogal & Hobbs ("HRH"). HRH or its predecessor in interest has served as Massport's broker for the Policy since approximately September 2002.

**B.    The Policy Terms**

12.    Massport, as owner of the Logan Modernization Projects, is a first named insured under the Policy.

13.    The Policy and certain Change Endorsements to the Policy are signed by Richard W. Girden, president of RLI Construction, on behalf of RLI.

14.    The Policy "insures against all risk of direct physical loss of or damage to" certain construction-related property "[w]hile at the job site described in Section 1 [of the Policy] until the project is completed and accepted in its entirety." Ex. A (Policy §§ 9 and 10). Section 1 in turn describes the "Project/Job Site" as

'Designated Logan Modernization worksites' and 'Designated Capital Programs worksites' which means the property owned or controlled by Massport that is located within the Logan International Airport, Logan Modernization and Capital Programs project boundaries and other agreed upon dedicated sites.

Ex. A (Policy § 1 ("Project/Job Site")).

15.    Thus the Policy covers all projects on Massport property located at Logan International Airport or as part of the Logan Modernization Projects. *Id.*

16.    The Policy term is from July 1, 2000, to July 1, 2004. Ex. A (Policy § 3 ("Term of Insurance")).    Additionally, the Policy provides that, "[s]hould construction, erection, installation or assembly of the project not be completed and

- 3 -

accepted in its entirety on or before [July 1, 2004], [the Policy] shall automatically be extended until the aforesaid completion and acceptance . . . ." *Id.* Thus, RLI agreed to maintain the same favorable Policy terms, including premium rates, for any project covered by the Policy, for the entire life of the project.

17.     The Policy limit is $481,878,000 for any one occurrence, with sub-limits for particular types of harm. Ex. A (Policy § 6 ("Limits of Liability")).

18.     The annual deposit premium on the Policy is $180,500. Ex. A (Policy, § 2 ("Premium")).   The agreed premium rate is $0.0375 per $100 of value, which value is subject to adjustment under a premium adjustment clause (the "Values Clause") in the Policy. *Id.*

19.     Pursuant to the Values Clause, the initial premium was based on the total value of projects in progress at the Policy inception, and was paid at the Policy inception and on each anniversary thereof. Ex. A (Policy Endorsement No. 1 – "Values"). *Id.* The premium was then subject to adjustment to account for certain "in-term project value increases and reductions . . . , pro-rated based on the period of time that coverage for the individual sub-project(s) was/were provided . . . ." *Id.* Thus, Massport's annual premium would rise or fall to reflect changes in the total project value.

20.     For example, in 2003, Massport was assessed an additional premium of $41,943 to reflect the addition of a new project, the Massport Baggage Screening project.   By way of further example, in late 2002, Massport received a return premium of $44,995 to reflect the fact that the Central Cooling and Heating Project and the Utilities Project had been completed and coverage was deleted.

21.     From the inception of the Policy to the present, Massport has paid RLI approximately $720,000 in premiums under the Policy.

## C.     Projects Encompassed By The Policy

22.     A variety of Logan Modernization Project job sites have been covered

- 4 -

under the Policy, such as, for example, the Hold Baggage Screening Program, the Cooling and Heating Plant Modifications Project, the Utilities Project, the International Gateway Terminal Project, and the Terminal Area Roadways Project. Each of these projects was accepted and bound by RLI under the Policy.

*International Gateway and Terminal Area Roadways Projects*

23.     The International Gateway and Terminal Area Roadways Projects listed above entail improvements to Logan's International Gateway and to the roadways around Logan's various terminals.

24.     RLI was informed of the existence of the International Gateway Project and confirmed that it was providing coverage for the project under the Policy. The current target completion date is October 2006.

25.     RLI was informed of the existence of the Terminal Area Roadways Project and confirmed that it was providing coverage for the project under the Policy. The current target completion date is August 2005.

*Central Garage Project*

26.     The Central Parking Garage Repairs and Expansion Project (the "Central Garage Project"), which involves improvements to the Central Parking Garage located at Logan, is covered under the Policy as a component of the Logan Modernization Projects. Just as with other in-term Logan Modernization Projects encompassed by the Policy, as described below Massport reported the Central Garage Project to RLI, and RLI assured Massport that the Central Garage Project would be covered under the Policy.

27.     In approximately September 2003, Walter Corbett of HRH discussed with RLI Underwriter Dean LaPierre Massport's intention to launch the Central Garage Project and to have it covered under the Policy, as provided for by the Policy terms. Mr. LaPierre was informed that the Central Garage Project value would be approximately $165 million. Mr. LaPierre told Mr. Corbett that RLI would cover

- 5 -

the Central Garage Project under the Policy. Mr. Corbett informed Massport of RLI's commitment to cover the Central Garage Project under the Policy.

28.    In the latter part of 2003, Mr. LaPierre left RLI. Roseanne Spoto replaced Mr. LaPierre as the RLI underwriter responsible for the Policy.

29.    In late 2003 or 2004, Mr. Corbett informed Ms. Spoto of Massport's plans for the Central Garage Project and reiterated that it was to be covered under the Policy. Ms. Spoto gave no indication that RLI objected to covering the Central Garage Project, or any other Project, under the Policy.

30.    On or about March 4, 2004, Ms. Spoto attended a meeting (the "March 4 Meeting") at Massport with representatives of Massport, HRH, and the Central Garage Project general contractor. At the March 4 Meeting, Ms. Spoto was shown a PowerPoint presentation about the Central Garage Project.

31.    At the March 4 Meeting, Massport reiterated that the Central Garage Project would have a value of approximately $165 million, and that Massport expected the project to be covered under the Policy. Ms. Spoto expressed no concerns about the Central Garage Project. On the contrary, Ms. Spoto expressly reaffirmed RLI's intention to bind the Central Garage Project under the Policy, as required by the Policy. She said RLI had approximately $25-50 million of coverage capacity in-house, and would obtain the balance of the coverage outside of RLI's then-existing reinsurance treaty.

32.    In reliance on RLI's assurances that the Central Garage Project would be covered under the Policy, Massport authorized the Central Garage Project to proceed, and a notice to proceed was issued in or about April 2004. The current target completion date is August 2007.

**E.    RLI's Repudiation of the Policy**

33.    On or about June 3, 2004, RLI for the first time advised HRH that RLI had a problem covering the Central Garage Project under the Policy.

- 6 -

34.    On or about June 22, 2004, RLI advised HRH that RLI would not bind the Central Garage Project under the Policy, and issued a proposed binder for the Central Garage Project on a new policy with terms that were substantially less favorable to Massport than the terms of the Policy, including without limitation lower policy limits and a higher premium rate.

35.    Massport, through its agent HRH, informed RLI that Massport objected to RLI's refusal to bind the Central Garage Project under the Policy.

36.    In discussions that followed between RLI and Mr. Corbett, Ms. Spoto and Mr. Girden each fraudulently denied that RLI had ever said that RLI would cover the Central Garage Project under the Policy. Mr. Girden then falsely asserted that the Central Garage Project was not a covered project under the Policy. Mr. Girden subsequently backtracked from that position and falsely claimed instead that RLI lacked adequate in-house capacity or adequate reinsurance to cover the deficiency.

37.    Given RLI's reversal of its position vis-à-vis the Central Garage Project, in or about July 2004, Mr. Corbett asked Mr. Girden to confirm that RLI would continue to cover the International Gateway and Terminal Area Roadways Projects under the Policy. Mr. Girden gave oral assurances that RLI would continue to cover those projects under the Policy. He agreed to put such assurances in writing, but he had no intention to do so and has failed to do so.

38.    On or about July 21, 2004, Mr. Girden participated in a conference call (the "July 21 Call") with representatives of Massport and HRH. On that call, Mr. Girden confirmed that the Policy obligates RLI to cover until completion all projects reported to RLI prior to July 1, 2004, including the Central Garage Project. Although Mr. Girden agreed to put that confirmation in writing, he had no intention of doing so and has failed to do so.

39.    During the July 21 Call, Mr. Girden also confirmed that, although he

- 7 -

agreed that the Policy required RLI to cover the Central Garage Project under the Policy, RLI would not do so and would instead cover the Central Garage Project under the new policy binder RLI had issued in June 2004. Mr. Girden fraudulently stated that RLI did not have and could not get the capacity or the money to cover the Central Garage Project under the Policy.

40.    During the July 21 Call, Mr. Girden again fraudulently gave his assurances that the International Gateway and Terminal Area Roadways Projects would continue to be covered under the policy.

41.    After the July 21 Call, RLI reversed its position concerning the International Gateway and Terminal Area Roadways Projects; RLI now says it views the Policy as "dead" and refuses to confirm whether RLI will continue to honor its coverage obligations concerning the International Gateway and Terminal Area Roadways Projects, despite repeated requests for such confirmation.

**F.    Massport's Replacement Policy**

42.    Because RLI refuses to honor its obligations under the Policy, Massport has been forced to obtain a new policy to cover the Central Garage Project and has been forced to add the International Gateway and Terminal Area Roadways Projects to its existing All Risk Property Insurance Policy prematurely, at a rate that is more than double the rate under the RLI policy.

43.    Massport now is paying substantial additional premiums and will incur substantial additional costs that it would not have incurred had RLI honored its coverage obligations under the Policy.

- 8 -

## COUNT I
### (Breach of Contract)

44.    Massport incorporates herein the allegations in paragraphs 1-43, above.

45.    The Policy constitutes an enforceable contract between RLI and Massport.

46.    Pursuant to the Policy, RLI was contractually obligated to cover the Central Garage, International Gateway, and Terminal Area Roadways Projects under the Policy.

47.    RLI's refusal to bind the Central Garage Project under the Policy is a material breach of RLI's contractual obligations under the Policy.

48.    RLI's refusal to honor its coverage obligations concerning the International Gateway and Terminal Area Roadways Projects is a material breach of RLI's contractual obligations under the Policy.

49.    As a direct and foreseeable result of RLI's breaches of its obligations under the Policy, Massport has been damaged, and will continue to incur additional damages, in an amount to be proven at trial.

## COUNT II
### (Breach of Covenant of Good Faith and Fair Dealing)

50.    Massport incorporates herein the allegations in paragraphs 1-49, above.

51.    The Policy contains an implied covenant of good faith and fair dealing.

52.    On repeated occasions, RLI negligently and intentionally misled Massport concerning its willingness and ability to honor its contractual obligations under the Policy.

53.    When the Policy became less profitable for RLI, RLI sought to cancel and rewrite the Policy with terms more favorable to RLI. When Massport declined to cancel and rewrite the Policy, RLI led Massport to believe it would continue to

- 9 -

honor its obligations under the Policy when, in fact, RLI had no intention of honoring its obligations under the Policy.

54.    Although it knew it was obligated to cover the Central Garage, International Gateway, and Terminal Area Roadways Projects under the Policy, RLI repudiated the Policy when it became less profitable to RLI, and shifted the economic impact to Massport.

55.    RLI's conduct constituted a breach of the implied covenant of good faith and fair dealing.

56.    As a direct and foreseeable result of RLI's breach of the implied covenant of good faith and fair dealing, Massport has been damaged, and will continue to incur additional damages, in an amount to be proven at trial.

### COUNT III
### (G.L. c. 176D)

57.    Massport incorporates herein the allegations in paragraphs 1-56, above.

58.    RLI engages in the business of insurance in the Commonwealth of Massachusetts.

59.    RLI made misrepresentations to Massport concerning the benefits, advantages, conditions and terms of the Policy, including without limitation misrepresenting facts and Policy provisions relating to coverage under the Policy.

60.    RLI made misrepresentations to Massport concerning the lapse, forfeiture, exchange, conversion or surrender of the Policy by Massport.

61.    For the purpose of obtaining money from Massport, RLI made misrepresentations to Massport relative to Massport's application for the Policy.

62.    RLI's conduct constitutes unfair methods of competition and unfair or deceptive acts or practices in the business of insurance in the Commonwealth of Massachusetts.

63.    As a direct and foreseeable result of RLI's unfair methods of competition and unfair or deceptive acts or practices, Massport has been damaged, and will continue to incur additional damages, in an amount to be proven at trial.

**COUNT IV**
(Fraud)

64.    Massport incorporates herein the allegations in paragraphs 1-63, above.

65.    RLI intentionally made misrepresentations to Massport concerning RLI's ability and willingness to underwrite the Policy.

66.    RLI intentionally made misrepresentations to Massport that RLI would cover the Central Garage Project under the Policy, when in fact it had no intention of doing so.

67.    RLI intentionally omitted to disclose to Massport that RLI had no intention of covering the Central Garage Project under the Policy.

68.    RLI bound the International Gateway and Terminal Area Roadways Projects under the Policy, and then intentionally made misrepresentations to Massport that that RLI would continue to cover those projects under the Policy when in fact it had no intention of doing so.

69.    RLI intentionally omitted to disclose to Massport that RLI had no intention of continuing to cover the International Gateway and Terminal Area Roadways Projects under the Policy.

70.    RLI intended and knew that Massport would rely on RLI's intentional misrepresentations and omissions.

71.    Massport in fact relied to its detriment on RLI's intentional misrepresentations and omissions.

72.    As a direct and foreseeable result of RLI's intentional misrepresentations and omissions, Massport has been damaged, and will continue

- 11 -

to incur additional damages, in an amount to be proven at trial.

### COUNT V
(Negligent Misrepresentation)

73.    Massport incorporates herein the allegations in paragraphs 1-72, above.

74.    RLI owed Massport a duty of care and negligently made misrepresentations concerning RLI's ability and willingness to underwrite the Policy.

75.    RLI negligently made misrepresentations to Massport that RLI would cover the Central Garage Project under the Policy.

76.    RLI negligently omitted to disclose to Massport in a timely manner that RLI would not cover the Central Garage Project under the Policy.

77.    RLI bound the International Gateway and Terminal Area Roadways Projects under the Policy, and then negligently made misrepresentations to Massport that that RLI would continue to cover those projects under the Policy.

78.    RLI negligently omitted to disclose to Massport in a timely manner that RLI would not cover the International Gateway and Terminal Area Roadways Projects under the Policy.

79.    RLI knew or should have known that Massport would rely on RLI's negligent misrepresentations and omissions.

80.    Massport in fact relied to its detriment on RLI's negligent misrepresentations and omissions.

81.    As a direct and foreseeable result of RLI's negligent misrepresentations and omissions, Massport has been damaged, and will continue to incur additional damages, in an amount to be proven at trial.

WHEREFORE, Massport prays for the following relief:

1.    For damages, including punitive damages;

- 12 -

2.     For interest, costs and reasonable attorney fees; and

3.     For such other relief as this Court deems proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Massachusetts Port Authority,

By its attorneys,

Beth I.Z. Boland, BBO #553654
Neil G. McGaraghan, BBO #649704
BINGHAM MCCUTCHEN LLP
150 Federal Street
Boston, Massachusetts 02110
(617) 951-8000

Dated: April ⌀, 2005

I HEREBY ATTEST AND CERTIFY ON

__MAY 6, 2004__, THAT THE

FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____

ASSISTANT CLERK.

**RLI Insurance Company • Peoria, Illinois**

## COMMON POLICY DECLARATIONS

Policy No. RBL0001094

New Policy                                          20068
Massachusetts Port Authority
One Harborside Drive                                Marsh USA Inc - New York
Suite 200S                                          1166 Avenue of The Americas
East Boston, MA  021282909                          New York, NY  10036-

Policy Period:   From **07/01/2000**   to **07/01/2004**   at 12:01 A.M. Standard Time at your mailing address shown above.

**BUSINESS DESCRIPTION**

[X]  Covered Locations Listed Below      [ ]  Schedule Of Locations Dated        On File With Company
**As per Schedule on file with the Company**

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy. This policy consists of the following coverage parts for which a premium is indicated. This premium may be subject to adjustment.

| Coverage Part | See Form | Premium |
|---|---|---|
| **Builder's Risk** | **See Attached Manuscript Form** | $ 722,000. Term |
|  |  | $ 180,500. Annual |
|  |  | $ |
|  |  | $ |
|  |  | $ |
|  |  | $ |
|  |  | $ |

|  |  | **Total** | $ 722,000. Term |
|---|---|---|---|
| **Premium is Payable** | **$ 180,500. Annual** | **At Inception** |  |

**ADDITIONAL FORMS AND ENDORSEMENTS** – MADE PART OF THIS POLICY AT TIME OF ISSUE
**See Attached Schedule of Endorsements**

Countersigned:_____       By:_____

                                                        **Authorized Representative**

**PM 12/13/2000**
CPR-0002 (12/99)                          **Producer**                          Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

    a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

1. We have the right to:

    a. Make inspections and surveys at any time;

    b. Give you reports on the conditions we find; and

    c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

    a. Are safe or healthful; or

    b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

# COMMERCIAL INLAND MARINE CONDITIONS

The following conditions apply in addition to the Common Policy Conditions and applicable Additional Conditions in Commercial Inland Marine Coverage Forms:

## LOSS CONDITIONS

### A. ABANDONMENT

There can be no abandonment of any property to us.

### B. APPRAISAL

If we and you disagree on the value of the property or the amount of "loss," either may make written demand for an appraisal of the "loss." In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of "loss." If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and

2. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

### C. DUTIES IN THE EVENT OF LOSS

You must see that the following are done in the event of "loss" to Covered Property:

1. Notify the police if a law may have been broken.

2. Give us prompt notice of the "loss." Include a description of the property involved.

3. As soon as possible, give us a description of how, when and where the "loss" occurred.

4. Take all reasonable steps to protect the Covered Property from further damage and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent "loss" resulting from a cause of loss that is not a Covered Cause of Loss. Also if feasible, set the damaged property aside and in the best possible order for examination.

5. Make no statement that will assume any obligation or admit any liability, for any "loss" for which we may be liable, without our consent.

6. Permit us to inspect the property and records proving "loss."

7. If requested, permit us to question you under oath, at such times as may be reasonably required, about any matter relating to this insurance or your claim, including your books and records. In such event, your answers must be signed.

8. Send us a signed, sworn statement of "loss" containing the information we request to settle the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

9. Promptly send us any legal papers or notices received concerning the "loss."

10. Cooperate with us in the investigation or settlement of the claim.

### D. INSURANCE UNDER TWO OR MORE COVER AGES

If two or more of this policy's coverages apply to the same "loss," we will not pay more than the actual amount of the "loss."

### E. LOSS PAYMENT

We will pay or make good any "loss" covered under this Coverage Part within 30 days after:

1. We reach agreement with you;

2. The entry of final judgment; or

3. The filing of an appraisal award.

We will not be liable for any part of a "loss" that has been paid or made good by others.

### F. OTHER INSURANCE

If you have other insurance covering the same "loss" as the insurance under this Coverage Part, we will pay only the excess over what you should have received from other insurance. We will pay the excess whether you can collect on the other insurance or not.

### G. PAIR, SETS OR PARTS

1. Pair or Set. In case of "loss" to any part of a pair or set we may:

   a. Repair or replace any part to restore the pair or set to its value before the "loss"; or

   b. Pay the difference between the value of the pair or set before and after the "loss."

2. Parts. In case of "loss" to any part of Covered Property consisting of several parts when complete, we will only pay for the value of the lost or damaged part.

     Copyright, Insurance Services Office, Inc., 1994

## H. PRIVILEGE TO ADJUST WITH OWNER

In the event of "loss" involving property of others in your care, custody or control, we have the right to:

1. Settle the "loss" with the owners of the property. A receipt for payment from the owners of that property will satisfy any claim of yours.

2. Provide a defense for legal proceedings brought against you If provided, the expense of this defense will be at our cost and will not reduce the applicable Limit of Insurance under this insurance.

## I. RECOVERIES

Any recovery or salvage on a "loss" will accrue entirely to our benefit until the sum paid by us has been made up.

## J. REINSTATEMENT OF LIMIT AFTER LOSS

The Limit of Insurance will not be reduced by the payment of any claim, except for total "loss" of a scheduled item, in which event we will refund the unearned premium on that item.

## K. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

If any person cr crganization to or for whom we make payment under this insurance has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after "loss" to impair them.

## GENERAL CONDITIONS

## A. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud, intentional concealment or misrepresentation of a material fact, by you or any other insured, at any time, concerning:

1. This Coverage Part;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this Coverage Part.

## B. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all the terms of this Coverage Part; and

2. The action is brought within 2 years after you first have knowledge of the "loss."

## C. NO BENEFIT TO BAILEE

No person or organization, other than you, having custody of Covered Property, will benefit from this insurance.

## D. POLICY PERIOD

We cover "loss" commencing during the policy period shown in the Declarations.

## E. VALUATION

The value of property will be the least of the following amounts:

1. The actual cash value of that property;

2. The cost of reasonably restoring that property to its condition immediately before "loss"; or

3. The cost of replacing that property with substantially identical property.

In the event of "loss," the value of property will be determined as of the time of "loss."

 Copyright, Insurance Services Office, Inc., 1994

# Massachusetts Port Authority (Owner)
## and O'Brien-Kreitzberg & Associates (Terminal Area Project Coordinator)

### Hereinafter Referred to as the "First Named Insured"

1. PROJECT/JOB SITE

   For the purposes of this insurance, the term "project" referred to herein means:
   "Designated Logan Modernization worksites" and "Designated Capital Programs worksites"
   which means the property owned or controlled by Massport that is located within the Logan
   International Airport, Logan Modernization and Capital Programs project boundaries and other
   agreed upon dedicated sites

   The term "project" wherever used in this policy includes all property insured hereunder.

2. PREMIUM

   In consideration of the insurance set forth herein, the annual deposit premium shall be
   $180,500 subject to pro rata provisions for periods less than one year.

   The agreed rate for the policy term is $0.0375 per $100 of value. Premium is further subject
   to the Premium Adjustment Clause attached to this policy.

3. TERM OF INSURANCE

   a. This RLI Insurance Company policy no. RBL0001094 attaches and covers for a period of
      four years from July 1, 2000 to July 1, 2004, beginning and ending at 12:01 A.M.,
      standard time, at location of property involved.

   b. Should construction, erection, installation or assembly of the project not be completed
      and accepted in its entirety on or before the expiration date stated in Clause a above, this
      policy shall automatically be extended until the aforesaid completion and acceptance
      subject to a pro rata additional premium.

4. PARTICIPATION

   This policy covers for a 100 percent interest in this insurance, and this Company shall not be
   liable for more than 100 percent of the limits of liability set forth herein.

5. ADDITIONAL NAMED INSUREDS

    a. It is agreed that:

        (1) The interest of the general contractor, the contractor, its subcontractors and their subordinate subcontractors are added as "Additional Named Insureds" under this policy to the extent of First Named Insured's liability imposed by law or assumed by contract whether written or oral.

        (2) All affiliated, subsidiary and associated companies and/or corporations of the First Named Insured as now exist or may hereafter be constituted or acquired are also added as "Additional Named Insureds" under this policy.

    b. The term "Insured" includes the "First Named Insured" and parties named as "Additional Named Insureds".

6. LIMITS OF LIABILITY

    ***a. Policy Limit:***

    This Company shall not be liable for more than its proportion of $ 481,878,000 for any one occurrence.

    ***b. Sublimits of Liability:***

| | |
|---|---|
| Earthquake | $250,000,000 (annual aggregate) |
| Flood | $100,000,000 (annual aggregate) |
| Extra & Expediting Expense | 25% of Total Project Value, with a $10,000,000 minimum |
| Transit | 25% of Total Project Value, with a $5,000,000 minimum |
| Unreported Projects | $2,500,000 (to be reported within 120 days) |
| Offsite Storage | 25% of Total Project Value, with a $5,000,000 minimum |
| Debris Removal | 25% of Total Project Value, with a $5,000,000 minimum |
| Service Interruption (Property Damage Only) | $5,000,000 |
| Newly Acquired Property | $1,000,000 |
| Valuable Papers | $1,000,000 |
| Existing/Adjoining Property | $1,000,000 |
| Pollution Cleanup & Removal – Land and Water (annual aggregate) | $100,000 |
| Soft Costs | $100,000 |

7. DEDUCTIBLE

All losses, damages or expenses arising out of any one occurrence shall be adjusted as one loss and from the amount of such adjusted loss shall be deducted the sum of:

a. $25,000 per occurrence as respects all losses covered hereunder; except

b. $25,000 per occurrence for Earthquake losses

c. $ 250,000 per occurrence as respects Flood Zone A as defined by FEMA (Federal Emergency Management Agency).

d. $25,000 per occurrence for Flood Zones B and C as defined by FEMA (Federal Emergency Management Agency).

Whether the claim involves loss at one or more locations, the deductible amount shall apply against the total loss suffered by the Insured from any one occurrence.

e. If two or more deductible amounts in this policy apply to a single occurrence, the total to be deducted shall not exceed the largest deductible applicable.

8. LOSS PAYABLE

Loss, if any, shall be adjusted with and payable to First Named Insured or their order, whose receipt shall constitute a release in full of all liability under this policy with respect to such loss.

9. COVERAGE

a. Except as hereinafter excluded, this policy covers:

(1) The interest of the Insured in all real and personal property (consisting principally of materials and supplies of all kinds, machinery, tools and equipment including parts thereof and temporary structures) intended for use in the construction, erection, installation or assembly of buildings, structures, machinery and other installations.

This policy does not provide coverage for builders' machinery, tools, equipment, temporary structures and scaffolding, staging, forms, etc. owned or rented by contractors or sub-contractors unless agreed to by the First Named Insured.

(2) The interest of the Insured in similar property of others in the Insured's care, custody or control and the Insured's liability imposed by law or assumed by contract, whether written or oral, for such property.

(3) At the option of the Insured, personal property of Insured's officials and employees while on the job site described in Section 1.

(4) The full interest of the Insured is admitted in any property purchased by or otherwise at risk of the general contractor, the contractor, its subcontractors and their subordinate subcontractors of any tier intended for the construction, erection, installation or assembly of the project.

b.  Such property is covered, subject to limits referenced in Section 6 of this policy:

(1)  While at the job site described in Section 1 until the project is completed and accepted in its entirety.

(2)  (a)  While in transit by any means of conveyance within and between the 50 states comprising the United States of America, the District of Columbia, Puerto Rico, the Virgin Islands and Canada, including the coastal waters thereof, and this policy shall cover all shipments from the time the property is moved for the purpose of loading and continuously thereafter while awaiting and during loading and unloading and in temporary storage, including temporary storage on any conveyance intended for use for any outbound or used for outbound shipment, including during deviation and delay, until safely delivered and accepted at place of final destination.

(b)  The insurance afforded under this paragraph is extended to cover loss or damage to property:

(i)  arising out of any unauthorized person(s) representing themselves to be the proper party(ies) to receive property for shipment or to accept property for delivery;

(ii)  occasioned by the acceptance by the Insured or by its agents of fraudulent bills of lading, shipping and delivery orders, or similar documents.

(3)  While on the premises of suppliers or others anywhere within the 50 states comprising the United States of America, the District of Columbia, Puerto Rico, the Virgin Islands and Canada.

c.  Offsite Storage

This policy covers loss or damage to existing property of the Insured at the job site described in Section 1 from a peril insured hereunder when such loss or damage arises out of the construction, erection, installation or assembly described under this policy.

d.  Extra Expense

(1)  Extra expense incurred by the First Named Insured resulting from loss, damage or destruction to property described in Clauses 9a, 9b and 9c by any of the perils covered herein during the term of this policy.

(2)  "Extra expense" means the excess of the total cost during the Period of Recovery chargeable to the project over and above the total cost that would normally have been incurred during the same period had no loss or damage occurred.

e. Soft Costs

(1) Loss resulting from a Delay in Completion of the project caused by loss, damage or destruction by any of the perils covered herein during the term of this policy to real or personal property described in Clauses 9a, 9b and 9c.

(2) (a) Recovery in the event of loss hereunder shall be limited to such necessary soft costs hereinafter described over and above those costs which would have been incurred by the First Named Insured during the Delay in Completion had no loss occurred.

  (b) For the purposes of this insurance, "soft costs" are defined as:

    (i) The amount of actual interim or construction financing interest, including loan fees and other one time charges incurred to negotiate a new construction loan and/or extend the existing one;

    (ii) realty taxes and ground rent if any;

    (iii) advertising and promotional expenses;

    (iv) cost of additional commissions incurred upon renegotiating leases;

    (v) architects, surveyors, legal, consulting engineers or other fees;

    (vi) project administration expense;

    (vii) insurance premiums.

(3) Definitions: The following terms, wherever used in this clause, shall mean as indicated:

  (a) "Delay in Completion" - the period of time between the Anticipated Date of Completion and the date on which the project is actually completed and operable with the exercise of due diligence and dispatch.

  (b) "Anticipated Date of Completion" – the date at the time of loss on which the project was scheduled to have been completed and operable had no physical loss or damage occurred.

f. Provisions Applicable to Extra Expense and Soft Costs Coverages:

  (1) Period of Recovery: The length of time for which loss may be claimed:

    (a) shall not exceed such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace such part of the property as has been destroyed or damaged;

(b) shall commence with the date of such loss or damage and shall not be limited by the date of expiration of this policy;

(2) Special Exclusions:  This section of the policy does not insure against any increase of loss which may be occasioned by the suspension, lapse or cancellation of any lease, license, contract or order; nor for any increase of loss due to interference at the job site described in Section 1 by strikers or other persons with rebuilding, repairing or replacing the property damaged or destroyed, or with the resumption or continuation of business.

(3) Expenses to Reduce Loss:  This policy also covers such expenses as are necessarily incurred for the purpose of reducing any loss under this policy, even though such expenses may exceed the amount by which the loss under this policy is thereby reduced.

(4) Extension of Coverage:  This policy, subject to all provisions and without increasing the amount of said policy, also insures against loss resulting from damage to or destruction by the perils insured against, of:

(a) electrical, steam, gas, water, telephone and other transmission lines and related plants, substations and equipment situated on or within 1 (one) statute mile of the premises;

(b) property that directly or indirectly prevents a supplier of goods and/or services to the Insured from rendering their goods and/or services;

(c) machinery, tools and equipment used in the construction, erection, installation or assembly of the project , but only when agreed to by the First Named Insured.

(5) Interruption by Civil or Military Authority:  This policy is extended to cover the loss sustained during the period of time when, as a direct result of a peril insured against, access to real or personal property is prohibited by order of civil or military authority.

(6) Ingress/Egress:  This policy is extended to cover the loss sustained during the period of time when, as a direct result of a peril insured against, ingress to or egress from real or personal property is thereby prevented.

## 10. PERILS INSURED AGAINST

The policy insures against all risk of direct physical loss of or damage to property described herein including general average, salvage and all other charges on shipments covered hereunder, except as hereinafter excluded.

11. PERILS EXCLUDED

This policy does not insure:

a. against any fraudulent or dishonest act or acts committed by First Named Insured's officers meaning only dishonest or fraudulent acts committed by the First Named Insured's officers with the manifest intent to:

(1) cause the First Named Insured to sustain such loss; and

(2) obtain financial benefit for First Named Insured's officers, or for any other person or organization intended by the First Named Insured's officers to receive such benefit, other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment;

This exclusion does not apply to acts or damage or destruction by employees, but theift by employees is not covered.

b. against the cost of making good defective design or specifications, faulty material or faulty workmanship; however, this exclusion shall not be applied to loss or damage resulting from such defective design or specifications, faulty material or faulty workmanship;

c. against ordinary wear and tear or gradual deterioration unless other loss or damage from a peril insured against herein ensues.

d. against loss of market, business interruption or extra expense loss due to delay with respect to property in transit;

e. against nuclear reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled and whether such loss be direct or indirect, proximate or remote; or be in whole or in part caused by, contributed to or aggravated by the peril(s) insured against in this policy; except:

(1) if fire ensues, liability is specifically assumed for direct loss by such ensuing fire but not including any loss due to nuclear reaction, nuclear radiation or radioactive contamination;

(2) this Company shall be liable for loss or damage caused by sudden and accidental radioactive contamination including resultant radiation damage for each occurrence from material used or stored or from processes conducted on insured premises provided at the time of loss there is neither a nuclear reactor capable of sustaining nuclear fission in a self-supporting chain reaction nor any new or used nuclear fuel on the insured premises;

f.  (1)  against hostile or warlike action in time of peace or war, including action in hindering, combating or defending against and actual, impending or expected attack:

    (a)  by any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval or air forces;

    (b)  or by military, naval or air forces;

    (c)  or by any agent of any such government, power, authority, or forces;

(2)  against any weapon employing atomic fission or fusion;

(3)  against rebellion, revolution, civil war, usurped power or action taken by governmental authority in hindering, combating or defending against such occurrence;

(4)  seizure or destruction by order of public authority, except destruction by order of public authority to prevent the spread of or to otherwise contain, control or minimize loss, damage or destruction which occurs  due to a peril insured against under this policy;

(5)  risks of contraband or illegal trade.

Notwithstanding the above provisions, f (1), (3), (4) and (5), this insurance shall cover loss or damage directly caused by acts committed by an agent of any government, party or faction engaged in war, hostilities or warlike operations, provided such agent is acting secretly and not in connection with any operation of armed forces (whether military, naval or air forces) in the country where the property is situated.  Nothing in the foregoing shall be construed to include  any loss, damage or expense caused by or resulting from any of the risks or perils excluded above, excepting only the acts of certain agents expressly covered herein, but in no event shall this insurance include any loss, damage or expense caused by or resulting from any weapon of war employing atomic fission or fusion whether in time of peace or war.

Exclusion b shall not apply to property in transit.

## 12. PROPERTY EXCLUDED

This policy does not cover loss or damage to:

a.  Money and securities;

b.  Builders' machinery, tools and equipment used in construction, erection, installation or assembly of  the project unless agreed to by the First Named Insured;

c. Land; however, this exclusion shall not apply to the cost of reclaiming, restoring or repairing land improvements. Land improvements as described hereunder are defined s any alteration to the natural condition of the land by excavation, grading, landscaping, earthen dikes or dams, as well as additions to land such as pavements, roadways or similar works;

d. Waterborne shipments to and from Puerto Rico, the Virgin Islands, Hawaii and Alaska; waterborne shipments via the Panama Canal;

e. Import shipments prior to discharge from overseas vessel or watercraft or until the ocean marine insurance terminates, whichever occurs last.

## 13. VALUATION

In case of loss, the basis of adjustment shall be as follows:

a. All property insured hereunder, except as described in Clause b below:

At replacement cost at the time the cost has incurred and at the place of loss, including any architects, surveyors, legal, consulting engineers and other fees incurred for the replacement or reinstatement of loss or damage; and if not so replaced, at actual cash value ( with proper deduction for depreciation).

b. Valuable papers and records:

The cost to repair or replace the property with other of like kind and quality including the cost of gathering and/or assembling information; or, if not so replaced, at actual cash value at the time of loss.

'Valuable paper and records" are defined as written, printed or otherwise inscribed documents and records, including but no limited to books, maps, films, drawings, abstracts, deeds, mortgages, micro-inscribed documents, manuscripts and media but not including money and/or securities.

The term "securities" shall mean all negotiable and nonnegotiable instruments or contracts representing either money or other property and includes revenue and other stamps in current use, tokens and tickets but does not include money.

## 14. EARTHQUAKE AND FLOOD

a. Each loss by earthquake, volcanic action or flood shall constitute a single loss hereunder.

(1) If more than one earthquake shock or volcanic action occurs within any period of 168 hours during the term of this policy, the beginning of which 168-hour period may be determined by the insured; or

(2) If any flood occurs within a period of the continued rising overflow of any river(s) or stream(s) and the subsidence of same within the banks of such river(s) or stream(s); or

(3) If any flood results from any tidal wave or series of tidal waves caused by any one disturbance;

such earthquake shocks, volcanic action or flood shall be deemed to be a single occurrence within the meaning of this policy.

b.  Should any time period referred to in "a" above extend beyond the expiration date of this policy and commence prior to expiration, this Company shall pay all such earthquake, volcanic action or flood losses occurring during such period as if such period fell entirely within the term of this policy.

c.  This Company shall not be liable, however, for any loss caused by any earthquake shock, volcanic action or flood occurring before the effective date and time or commencing after the expiration date and time of this policy.

## 15. FIRE BRIGADE CHARGES AND EXTINGUISHING EXPENSES

This policy covers the following expenses resulting from a peril insured against:

a.  fire brigade charges and other extinguishing expenses for which the Insured may be assessed;

b.  loss of fire extinguishing materials expended.

## 16. DEBRIS REMOVAL

This policy covers the following expenses resulting from a peril insured against:

a.  the cost of removal of debris of property covered hereunder, including the cost of demolition and site clearance of any portion of the insured property no longer useful for the purpose for which it was intended;

b.  the cost of removal of debris of property not insured hereunder from the job site.

## 17. DEMOLITION AND INCREASED COST OF CONSTRUCTION

In the event of loss or damage under this policy that causes the enforcement of any law or ordinance regulating the construction, repair or use of property, this Company shall be liable for:

a.  The cost of demolishing the undamaged property including the cost of clearing the job site described in Section 1;

b.  the proportion that the value of the undamaged part of the property bore to the value of the entire property prior to loss;

c.  increased cost of repair or reconstruction of the damaged and undamaged property on the same or another job site and limited to the costs that would have been incurred in order to

comply with the minimum requirements of such law or ordinance regulating the repair or reconstruction of the damaged property on the same job site described in Section 1. However, this Company shall not be liable for any increased cost of construction loss unless the damaged property is actually rebuilt or replaced;

d. any increase in the extra expense loss arising out of the additional time required to comply with said law or ordinance.

## 18. EXPEDITING EXPENSES

This policy covers the reasonable extra cost of temporary repair and of expediting the repair of damaged property insured hereunder, including overtime and express freight or other rapid means of transportation.

## 19. CONTRIBUTING INSURANCE

Contributing insurance is insurance written upon the same plan, terms, conditions and provisions as those contained in this policy. This insurance shall contribute in accordance with the conditions of this policy only with other contributing insurance as defined.

## 20. EXCESS INSURANCE

Excess insurance is insurance over the limit of liability set forth in this policy. The existence of such excess insurance shall not prejudice the coverage provided under this policy nor will it reduce any liability hereunder.

## 21. UNDERLYING INSURANCE

a. Underlying insurance is insurance on all or any part of the deductible and against all or any of the perils covered by this policy including declarations of value to the carrier for hire. The existence of such underlying insurance shall not prejudice or affect any recovery otherwise payable under this policy.

b. If the limits of such underlying insurance exceed the deductible amount which would apply in the event of loss under this policy, then that portion which exceeds such a deductible amount shall be considered "contributing insurance."

## 22. OTHER INSURANCE

Except for insurance described by the contributing insurance clause, by the excess insurance clause or by the underlying insurance clause, it is agreed that any other insurance which the Insured may have to insure loss covered by this policy shall not be required to contribute to any loss to the extent of this Company's liability under this policy, and insurance hereunder shall apply as though such other policy(ies) did not exist.

## 23. AGREEMENT WITH CARRIERS OR LIGHTERMEN

a. The Insured may waive right(s) of recovery against private, contract and common carriers and accept bills of lading or receipts from carriers, bailees, warehousemen or processors limiting or releasing their liability, but the transit insurance provided herein shall not inure to the benefit of any carrier, bailee, warehouseman or processor.

b. The Insured is not to be prejudiced by any agreement exempting lightermen from Liability.

## 24. SUBROGATION

a. Any release form liability entered into by the Insured prior to loss hereunder shall not affect this policy or the right of the Insured to recover hereunder. The right of subrogation against the Insured, or any other corporations or companies associated with the First Named Insured through ownership or management is waived.

b. In the event of any payment under this policy, this Company shall be subrogated to the extent of such payment to all the Insured's rights of recovery therefor. The Insured shall execute all papers required and shall do anything that may be necessary at the expense of the Company to secure such right. The Company shall act in concert with all other interests concerned, i.e., the Insured and any other company(ies) participating in the payment of any loss as primary of excess insurers, in the exercise of such rights of recovery. If any amount is recovered as a result of such proceedings, the net amount recovered after deducting the costs of recovery shall be divided between the interests concerned in the  proportion of their respective interests. If there should be no recovery, the expense of proceedings shall be borne proportionately by the interests instituting the proceedings.

## 25. SALVAGE AND RECOVERIES

All salvages, recoveries and payments, excluding proceeds from subrogation and underlying insurance recovered or received prior to a loss settlement under this policy shall reduce the loss accordingly. If recovered or received subsequent to a loss settlement under this policy, such net amounts recovered shall be divided between the interests concerned, i.e. the Insured and any other company(ies) participating in the payment of any loss, in the proportion of their respective interests.

## 26. MACHINERY

In case of loss or damage by a peril insured against to any part of a machine or unit consisting of two or more parts when complete for use, the liability of the Company shall be limited to the value of the part or parts lost or damaged or, at the First Named Insured's option  to the cost and expense of replacing or duplicating the lost or damaged part or parts or of repairing the machine or unit.

## 27. SEAWORTHINESS

Seaworthiness of any vessel or watercraft and airworthiness of any aircraft are admitted between this Company and the Insured.

## 28. ERRORS AND OMISSIONS

Any unintentional error or omission made by the Insured shall not void or impair the insurance hereunder provided the First Named Insured reports such error or omission as soon as reasonably possible after the discovery by the First Named Insured's home office insurance department.

## 29. NOTICE OF LOSS

As scon as practicable after any loss or damage occurring under this policy is known to the First Named Insured's home office insurance department, the First Named Insured shall report such loss or damage with full particulars to Marsh USA, Inc., 200 Clarendon Street, Boston, MA 02116-5093 for transmission to this Company.

## 30. PROOF OF LOSS

It shall be necessary for the Insured to render a signed and sworn proof of loss to the Company or its appointed representative stating: the place, time and cause of the loss, damage or expense; the interest of the Insured and of all others; the value of the property involved in the loss; and the amount of loss, damage or expense.

## 31. PARTIAL PAYMENT LOSS

In the event of a loss covered by this policy, it is understood and agreed that the Company shall allow a partial payment(s) of claim subject to the policy provisions and normal Company adjustment process.

## 32. LOSS ADJUSTMENT AND EXPENSES

This policy is extended to include expenses incurred by the First Named Insured or the First Named Insured's representatives for preparing and certifying details of a claim resulting from a loss which would be payable under this policy. However, this Company shall not be liable under this clause for expenses incurred by the First Named Insured in utilizing the services of a public adjuster.

## 33. ASSIGNED ADJUSTER

It is agreed that at the First Named Insured's option, the Company will use McLarens Toplis for the adjustment of all claims made against this policy.

## 34. APPRAISAL

If the First Named Insured and this Company fail to agree on the amount of loss, each, upon the written demand either of the First Named Insured or of this Company made within 60 days after receipt of proof of loss by the Company, shall select a competent and disinterested appraiser. The appraisers shall then select a competent and disinterested umpire. If they should fail for 15 days to agree upon such umpire, then upon the request of the First Named Insured or of this Company, such umpire shall be selected by a judge of a court of record in the county and state in which such appraisal is pending. Then, at a reasonable time and place, the appraisers shall appraise the loss. If the appraisers fail to agree, they shall submit their differences to the umpire. An award in writing by any two shall determine the amount of loss. The First Named Insured and this Company shall each pay his or its chosen appraiser and shall bear equally the other expenses of the appraisal and of the umpire.

## 35. DEFENSE SETTLEMENT

The Company will defend any suit against the Insured seeking damages for alleged liability because of physical damage, destruction or loss to personal property of others while in the Custody of the Insured and as insured against by this Policy even if such suit is groundless, false or fraudulent; but the Company may without prejudice make such investigation, negotiation and settlement of any claim or suit as the Company deems expedient.

## 36. CONSEQUENTIAL LOSS

This policy insures against consequential loss to the property insured caused by change of temperature or humidity or by interruption of power, heat, air conditioning or refrigeration resulting from a peril insured against.

## 37. PAIR AND SET

Except as provided under Section 26, in the event of loss or damage by a peril insured against to any article or articles which are a part of pair or set, the measure of loss or damage to such article or articles shall be, at the First Named Insured's option:

a. the reasonable and fair proportion of the total value of the pair or set, giving consideration to the importance of said article or articles, but in no event shall such loss or damage be construed to mean total loss of the pair or set; or

b. the full value of the pair or set provided that the First Named Insured surrenders the remaining article or articles of the pair or set to the Company.

## 38. ASSISTANCE AND COOPERATION OF THE FIRST NAMED INSURED

The First Named Insured shall cooperate with this Company and, upon this Company's request and expense, shall attend hearings and trials and shall assist in effecting settlements, in securing and giving evidence, in obtaining the attendance of witnesses and in conducting suits.

### 39. SUE AND LABOR

In case of actual or imminent loss or damage by a peril insured against, it shall, without prejudice to this insurance, be lawful and necessary for the Insured, their factors, servants or assigns to sue, labor and travel for, in and about the defense, the safeguard and the recovery of the property or any part of the property insured hereunder; nor, in the event of loss or damage, shall the acts of the Insured or of this Company in recovering, saving and preserving the insured property be considered a waiver or an acceptance of abandonment.  This Company shall contribute to the expenses so incurred according to the rate and quantity of the sum herein insured.

### 40. PAYMENT OF LOSS

All adjusted claims shall be due and payable no later than 30 days after presentation and acceptance of proofs of loss by this Company or its appointed representative.

### 41. REINSTATEMENT

With the exception of loss caused by perils which are subject to annual aggregate limits as noted in Section 6, no loss hereunder shall reduce the amount of this policy.

### 42. SUIT AGAINST THE COMPANY

No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless the First Named Insured shall have fully complied with all the requirements of this policy.  The Company agrees that any action or proceeding against it for recovery of any loss under this policy shall not be barred is commenced within the time prescribed therefor in the statutes of the commonwealth of Massachusetts.

### 43. PERMISSION

Permission is granted to operate and/or occupy any building, structure, machinery or other installation or any portion thereof or any portion of any group of building, structures, machinery or other installations at the job site or locations covered under this policy prior to or after completion, and such operation and/or occupancy alone shall not constitute acceptance of the particular job or jobs referred to in this policy.

### 44. CERTIFICATES OF INSURANCE

Any certificates of insurance issued by the Company in connection with this policy shall be issued solely as a matter of convenience or information for the addressee(s) or holder(s) of said certificate of insurance, except where any Additional Named Insured(s) or Loss Payee(s) are named pursuant to the Special Provisions of said certificate of insurance.  In the event any Additional Named Insured(s) or Loss Payee(s) are so named, this policy shall be deemed to have bee endorsed accordingly, subject to all other terms, conditions and exclusions stated herein.

The Company hereby authorizes Marsh USA Inc. to issue certificates of insurance including any Mortgagee, Loss Payee and Additional Insured clauses.

## 45. CANCELLATION

a. This policy may be cancelled at any time at the request of the First Named Insured. This policy cannot be cancelled by the Company except at follows:

(1.) Nonpayment of premium. Ten (10) days written notice must be given.
(2.) Where allowed in accordance with Massachusetts State statutes.

It may only be cancelled by the Company mailing to the First Named Insured at:

> Mr. Richard Meyer
> Director, Labor Relations and Risk Management
> Massachusetts Port Authority
> One Harborside Drive, Suite 200S
> Boston, MA 02128-2909

and to the additional named insureds/loss payees indicated on the certificates of insurance issued during the term of this policy, written notice stating when, not less than 90 days thereafter, such cancellation shall be effective.

b. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the First Named Insured or by the Company shall be equivalent to mailing.

c. In the event of cancellation before the project has been completed and accepted in its entirety, a pro rata earned premium shall be computed based upon the value at risk at the time of cancellation.

d. Cancellation shall not affect coverage on any shipment in transit on the date of cancellation. Coverage will continue in full force until such property is safely delivered and accepted at place of final destination.

## 46. FULL WAIVER

The terms and conditions of this form and endorsements attached thereto are substituted for those of the policy to which it is attached, all terms, conditions and endorsements of latter being waived.

## VALUES

The values for any projects in progress will be reported and used for premium calculation going into the policy.

Premium will be calculated on an annual basis and paid at policy inception and each anniversary there from. If any new projects are added, they will be considered for additional premium at the time they are added and will be pro-rated until the next anniversary date.

Add tional premium will be paid at the time of the addition. If any projects are completed, the pro-rata return premium will be calculated and processed at the time of completion.

If there are any substantial changes in project values (10% of project value or more), it is agreed the premium will be adjusted from inception of the project (or inception of RLI Insurance Company coverage in the case of a project in process) and additional premium or return premium will be processed at the time of the adjustment.

## 47. TITLES OF PARAGRAPHS

The titles of the paragraphs of this form and of endorsements and supplemental contracts, if any, now or hereafter attached hereto and inserted solely for convenience of reference and shall not be deemed in any way to limit or affect the provisions to which they relate.

## 48. POLICY AUTHORS

Regardless of who may have drafted or prepared this policy, or any portions thereof, the provisions contained herein shall be deemed to have been authored by this Company.

## 50. JOINT LOSS AGREEMENT

With respect to insurance provided by this policy, it is agreed that:

A.   If at the time of loss, there is in existence a policy(ies) issued by a property insurance company which may cover the same property or cover the location at which the property subject to loss is situated; and

E.   if there is a disagreement between the companies under this policy and such other contract either as to:

(1)   whether such damage or destruction is insured against by this policy or by an occurrence insured against by such property insurance policy; or

(2)   the extent of participation of this policy and of such property insurance policy in a loss which is insured against, partially or wholly, by any one or all of said policies;

this Company shall, upon written request of the Insured, pay to the Insured one-half of the amount of the loss which is in disagreement, but in no event more than this Company would have paid if there had been no property insurance policy in effect, subject to the following conditions:

(1)  the amount of the loss which is in disagreement, after making provisions for any undisputed claims payable under the said policies and after the amount of the loss is agreed upon by the Insured and the companies is limited to the minimum amount remaining payable under either the property policy or this policy(ies);

(2)  the property insurance company shall simultaneously pay to the Insured at least one half of said amount which is in disagreement;

(3)  the payments by the companies hereunder and acceptance of the same by the Insured signify the agreement of the companies to submit to and proceed with arbitration within ninety days of such payments;

The arbitrators shall be three in number, one of whom shall be appointed by the property insurance company, one of whom shall be appointed by this Company, and the third of whom shall be appointed by consent of the other two; the decision by the arbitrators shall be binding on the companies and that judgment upon such award may be entered in any court of competent jurisdiction;

(4)  the Insured agrees to cooperate in connection with such arbitration but not to intervene therein;

(5)  the provisions shall not apply unless such other policy issued by the property insurance company is similarly endorsed;

(6)  acceptance by the Insured of sums paid pursuant to the provisions, including an arbitration award, shall not operate to alter, waive, surrender or in any way affect the rights of the Insured against any of the companies.

Attached to and forming part of Policy No. ___ RBL0001094 ___ of the _____
_____ RLI _____ Insurance Company.

_____
*[Authorized Signature]*

# Exclusion of Certain Computer Related Losses -- "A"

**This endorsement modifies insurance provided. Please read it carefully.**

A.  We will not pay for loss ("loss") or damage caused directly or indirectly by the following. Such loss ("loss") or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss ("loss") or damage:

1.  The failure, malfunction or inadequacy of:

    a.  Any of the following, whether belonging to any insured or to others:

        (1) Computer hardware including microprocessors;

        (2) Computer application software;

        (3) Computer operating systems and related software;

        (4) Computer networks, or

        (5) Any other computerized or electronic equipment or components, or

    b.  Any other products, and any services, data or functions that directly or indirectly use or rely on, in any manner, any of the items listed in Paragraph A.1.a. of this endorsement:

        due to the inability to correctly recognize, process, distinguish, interpret, or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

2.  Any advise, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph A.1.a. and A.1.b. of this endorsement.

B.  However, if direct physical loss or damage not otherwise excluded by this policy results, then subject to all of its terms and conditions, this Policy shall cover only such resulting direct physical loss or damage to a sublimit of $ **Policy Limit**

C.  Claims for resulting physical loss or damage at multiple locations shall constitute a separate occurrence at each location.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

This endorsement must be attached to the change endorsement
when issued after the policy is written.

# RLI INSURANCE COMPANY

9025 N. Lindbergh Drive
Peoria, Illinois 61615

DEAR POLICYHOLDER:

Thank you for placing your coverage with RLI Construction. Our customers are important to us, and we value and appreciate your business.

It's important to remember that ALL LOSSES must be reported to your AGENT or BROKER.

As part of a continuing effort to provide you with the best service and product available, we have arranged for a "HOT-LINE" EMERGENCY SERVICE to afford you 24 hour service.

In the event you suffer an EMERGENCY LOSS during NON-BUSINESS hours (holidays, weekends, or 5:30 p.m. – 8:30 a.m. CST on normal business days), you may now call a special toll-free hot-line number to receive after hour advice and assistance. Contact our designated adjusters, McLarens Toplis, at their toll-free number **1-800-621-7059**. This number is to be used only during NON-BUSINESS hours and only in the event of an emergency.

Below is a "tear out" card to keep in your wallet or with your business papers. Please fill in the Insured Name and Policy Number as shown on your Declarations page so that the card will contain your name, policy number, and the HOT-LINE EMERGENCY NUMBER.

We pledge to continue upgrading our services to our valued policyholders.

Sincerely,

Richard W. Girden
President, RLI Construction

CUT ALONG DOTTED LINE

Insured:

Policy No.:

## EMERGENCY HOT-LINE PHONE CONTACT

## 1-800-621-7059

Keep this card with you or in a safe place
for emergency use only.

CL 9000 (04/00)

# NOTICE TO OUR BROKERS AND AGENTS
# OF OUR CLAIM NOTIFICATION PROCEDURE

As part of our continuing effort to provide you with the best service available, ALL CLAIMS under this policy are to be reported immediately to:

**RLI Insurance Company**
**9025 N. Lindbergh Drive**
**Peoria, IL  61615**

**Phone:**   **(800) 444-0406**
**Fax:**      **(800) 692-6796**

**Non-business Hours Emergency Phone:    (800) 621-7059**

Policy No. **RBL0001094**                                                    **RLI Insurance Company**

Endorsement Effective Date: **7/1/2000**                                          Endorsement Number: **A**

## CHANGE ENDORSEMENT

Insured Name: **Massachusetts Port Authority**

|  | | |
|---|---|---|
| | ADDITIONAL PREMIUM | $ |
| | RETURN PREMIUM | $ |
| **X** | NO PREMIUM CHANGE | |
| | TOTAL $ | |

IT IS UNDERSTOOD AND AGREED THAT:

| | | |
|---|---|---|
| ☐ 1.  PREMIUM | ☐ 7.  COVERAGE | ☐ 13. COVERAGE IS CANCELLED |
| ☐ 2.  DEPOSIT PREMIUM | ☐ 8.  INCEPTION DATE | ☐    SHORT RATE |
| | | ☐    PRO RATE |
| ☐ 3.  MINIMUM PREMIUM | ☐ 9.  EXPIRATION DATE | ☐    MINIMUM PREMIUM APPLIES |
| ☐ 4.  RATE | **X** 10. TERMS | ☐ 14. ADDITIONAL INSURED BUT |
| **X** 5.  INSTALLMENT | ☐ 11. NAME OF INSURED | ONLY AS RESPECTS THE |
| | | OPERATIONS OF THE NAMED |
| ☐ 6.  AUDIT | ☐ 12. ADDRESS OF INSURED | INSURED |
| ☐    IS CHARGED FOR THE PERIOD: | **X** IS AMENDED TO READ AS FOLLOWS: | |

The Installment Dates on this policy are as follows:

| Due Date: | Amount |
|---|---|
| 7/1/2000 | $180,500. |
| 7/1/2001 | 180,500. |
| 7/1/2002 | 180,500. |
| 7/1/2003 | 180,500. |

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATE OF ISSUE: **PM  12/13/2000**

_Authorized Signature_

CPR 2100 (11/95)                                    **Producer**                                    Page 1 of 1

Marsh USA Inc.
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 421-0200



## Endorsement

February 13, 2002

Date

NO:  **1**

Insured:  Massachusetts Port Authority
Mr. David G. LaPlante
Assistant Director, Risk Management
One Harborside Drive, Suite 200S
East Boston, MA 02128-2909

| Insured By: RLI Insurance Company | Amount | Effective | Expiring |
|---|---|---|---|
| 9025 North Lincbergh Drive | | | |
| Peoria, IL 61615 | N/A | 7/1/00 | 7/1/04 |

Policy No: RBL0001094

Effective February 13, 2002 this policy wording is hereby amended to replace the Values section on page 17 of the policy:

The values for the project in progress will be reported and used for premium calculation going into the policy.

Premium will be calculated on an annual basis and paid at policy inception and each anniversary there from.

Premium adjustments for in- term project value increases and reductions will not be made unless the net change, increases less decreases, in project values are greater than10% of the total project value at the prior anniversary.  In that event, premium adjustments will be made on a retrospective basis and will be pro-rated based on the period of time that coverage for the individual sub-project(s) was/were provided during the annual policy term.

Authorized Signature

By:  William Bogins

Unit:  Global Services Group

*It is agreed that insurance contracts and premium agreements subsequently issued shall conform to this binder.*

Form C-SPI Ed. >/90

**Revised: 03/29/2002**

## Schedule of Parts Included

The following Parts all attach to and form a part of Syndicate Policy No. **20-7-03540**.

Form N-87-1 (Group 14-35) Ed. 7/00

Form N-87-4 Ed. 1/00

Form N-87-1 (Group 38) Ed. 1/01

Form N-87-4 Ed. 1/01

Form N-87-1-TX (Group 1-35) Ed. 7/00

Form N-87-4-TX Ed. 1/00

Form N-87-1-TX (Group 38) Ed. 1/01

Form N-87-4-TX Ed. 1/01

Form N87-2 (Massachusetts) Ed. 4/87

Form N87-3 Ed. 10/92

Page No.

Form C-AR-Dec Ed. 9/90
Comprehensive All Risk Form Declarations ....................................................................1

Form C-SL Ed. 9/90
Schedule of Locations....................................................................................................10

Form C-LL Ed. 4/88
Location Limit of Liability Schedule...............................................................................20

Form C-EELL Ed. 4/88
Extra Expense Limit of Liability Schedule......................................................................21

Form C-AR-GC Ed. 9/90
Comprehensive All Risk Form General Conditions.........................................................22

Form C-TEC Ed. 9/90
Time Element Conditions ...............................................................................................35

Form C-AR-PD Ed. 9/90
Coverage Part A Property Damage..................................................................................39

Form C-BI/GE Ed. 9/90
Coverage Part B Gross Earnings .....................................................................................46

Form C-EE Ed. 9/90

Form C-SPI Ed. 9/50

Coverage Part C Extra Expense ........................................................................................48

Form N-305-AR Ed. 9/90
Boiler and Machinery Endorsement .................................................................................50

Form N-580-AR Ed. 4/88
Earthquake Endorsement .................................................................................................52

Form N-581-AR Ed. 4/88
Flood Endorsement ..........................................................................................................54

Form N-582-AR Ed. 4/88
Transit Endorsement .........................................................................................................56

Form N-585-C Ed. 9/90
Pollutant Cleanup and Removal Excess Insurance Endorsement ....................................59

Form N-492-C Ed. 9/90
Valuable Papers and Records Endorsement .....................................................................60

Form N-493-C Ed. 9/90
Accounts Receivable Endorsement ..................................................................................62

Form N-625-C Ed. 9/90
Fine Arts Endorsement .....................................................................................................65

Form N-317-C Ed. 4/88
Replacement Coverage Endorsement ...............................................................................68

Form N-318-C Ed. 4/88
Replacement Coverage Agreed Amount Endorsement .....................................................70

Form N-126-C Ed. 4/88
Agreed Amount Endorsement ..........................................................................................71

Form N-239A-PD-C Ed. 9/90
Off-Premises Power Endorsement - Property Damage Coverage Including Transmission

Facilities...........................................................................................................................72

Form N-239A-TE-C Ed. 9/90
Off-Premises Power Endorsement - Time Element Coverage Including Transmission Facilities

.........................................................................................................................................74

Form EDRC Ed. 8/98
Electronic Date Recognition Clause .................................................................................76

Form N-587-MA Ed. 12/90
Massachusetts Amendatory Endorsement .........................................................................77

Form N-309M Ed. 8/90
Endorsement Number: 15 .................................................................................................85

Form PCP Ed. 10/99
Endorsement Number: 16 .................................................................................................86

Form C-SPI Ed. 9/90

Form N-30)M Ed. 8/90
   Endorsement Number: 17 ................................................................................................87

Form N-30)M Ed. 8/90
   Endorsement Number: 18 ................................................................................................92

J. A. TINETTI, AGENT

BY *Maria A. Rondinelli*
   HIS ATTORNEY

Form N-309M E1. 8/90

# ENDORSEMENT

**Attaches to Policy Number:** 20-7-03540          **Endorsement Number:** 18

**Insured:** Massachusetts Port Authority          **Key Number:** 500270

**Policy Term:** 07/01/2000 to 07/01/2003          **Effective Date This Endorsement:** 11/18/2001

---

**The clause entitled <u>Exclusion of Coverage</u> appearing in this policy is hereby deleted and the following is substituted:**

## <u>Exclusion of Coverage</u>

Coverage as provided by this policy does not apply to the following property, listed by location:

**Loc. 010**

      a.    Parking Area – Item A (Terminal D)
      b.    Paved Areas – Item D (Heating Plant)
      c.    Paved Areas – Item F (Field Maintenance Facility II)
      d.    Paved Areas – Item G (Crash Crew Building)
      e.    Paved Parking Areas – Item I (IA Risk Central Parking Garage)
      f.    Paved Parking Lot, Fences & Blast Fences – Item K (Terminal E – Volpe Terminal)
      g.    Paved Parking Lot – Item L (Terminal A)
      h.    Airport Roadways except associated signage
      i.    Concrete Apron and Vehicular Parking Lot – Item R (American Airlines Hangar)
      j.    Building – Item Y (Dobbs Flight Kitchen)
      k.    Maintenance Facility 3 – Building 4

**Loc. 015**

      a.    Building, Blast Fence and Vehicular Parking Lot – Item D (US Air Hangar)
      b.    Delta Reservations Building
      c.    Fire Boat Dock
      d.    Former Navy Fuel Pier
      e    New Hangar and Vehicular Parking Lot – Item N (Delta Airlines Hangars)
      f.    Terminal E Parking Lot
      g.    Prescott Street Parking Lot
      h.    Paved Areas – Item U (Building 44 – Old US Post Office)

**Loc. 020**

      a.    Roadways
      b.    Parking Lots

Form N-309M Ed. 8/90

   c.  Paved Aprons – Item R (M.I.T. Hangar)

## Loc. 030

   a.  Pier 3 Wharf and Apron
   b.  Paved Areas
   c.  Railroad Tracks

## Loc. 040

   a.  Building
   b.  Paved Parking Lot
   c.  Viaduct
   d.  Portion of Northern Ave.
   e.  Railroad Tracks

## Loc. 060

   a.  Containers and their Contents
   b.  Paved Areas
   c.  Railroad Tracks

## Loc. 070

   a.  North and South Pier Sheds (117 & 118)
   b.  Wharf Apron
   c.  Paved Areas
   d.  Railroad Tracks

## Loc. 080

   a.  Paved Areas
   b.  Containers and their Contents

## Loc. 090

   a.  Portion of Northern Avenue and Ramp Avenue

## Loc. 100

   a.  The Tobin Memorial Bridge Structure

## Loc. 120

   a.  Paved Areas

Policy No. **RBL0001094**

**RLI Insurance Company**

Endorsement Effective Date: **7-1-01**

Endorsement Number: **A1**

## CHANGE ENDORSEMENT

Insured Name: **Massachusetts Port Authority**

[X] ADDITIONAL PREMIUM    $369.

[ ] RETURN PREMIUM    $

[ ] NO PREMIUM CHANGE

**TOTAL $369.**

IT IS UNDERSTOOD AND AGREED THAT:

| | | |
|---|---|---|
| [ ] 1. PREMIUM | [ ] 7. COVERAGE | [ ] 13. COVERAGE IS CANCELLED |
| | | [ ] SHORT RATE |
| [ ] 2. DEPOSIT PREMIUM | [ ] 8. INCEPTION DATE | [ ] PRO RATE |
| | | [ ] MINIMUM PREMIUM APPLIES |
| [ ] 3. MINIMUM PREMIUM | [ ] 9. EXPIRATION DATE | |
| [ ] 4. RATE | [ ] 10. TERMS | [ ] 14. ADDITIONAL INSURED BUT ONLY AS RESPECTS THE |
| [X] 5. INSTALLMENT | [ ] 11. NAME OF INSURED | OPERATIONS OF THE NAMED INSURED |
| [ ] 6. AUDIT | [ ] 12. ADDRESS OF INSURED | |
| [ ] IS CHARGED FOR THE PERIOD: | [ ] IS AMENDED TO READ AS FOLLOWS: | |

The Installment Dates on this policy are as follows:

| Due Date: | Amount |
|---|---|
| 7/1/2000 | $180,500. |
| 7/1/2001 | $180,869. |
| 7/1/2002 | Provisional: $180,500. |
| 7/1/2003 | Provisional: $180,500. |

Provisional Installments are subject to amendment in accordance with the terms and conditions of the policy.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

DATE OF ISSUE: SO 04/04/2002

Authorized Signature

| CIVIL ACTION COVER SHEET | DOCKET NO. 05-1361 B. L. S | Trial Court of Massachusetts Superior Court Department County:_____ |
|---|---|---|

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| Massachusetts Port Authority | RLI Corporation, RLI Insurance Company |

| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE | ATTORNEY (if known) |
|---|---|
| Neil McGaraghan, Esq. Bingham McCutchen, LLP 150 Federal St., Boston, MA 617-951-8121 Board of Bar Overseers number: | |

**Origin Code**

**Original Complaint**

*(vertical stamp text):* MICHAEL JOSEPH DONOVAN CLERK/MAGISTRATE   2005 APR -1 P 3:58   SUFFOLK SUPERIOR COURT CIVIL CLERK'S OFFICE

### TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify)   TRACK | IS THIS A JURY CASE? |
|---|---|---|
| BE.1,BK.1 | Breach of Contract,Fraud Negligent Misrepresent. Unfair Ins. Practices ( B ) | ( X ) Yes   ( ) No |

**The following is a full and detailed statement of the facts on which plaintiff relies to determine eligibility in to The Business Litigation Session.**

This case concerns the failure of the Defendants ("RLI") to honor their coverage obligations to the Plaintiff, Massachusetts Port Authority ("Massport"), under a builder's risk insurance policy (the "Policy") in connection with ongoing construction and improvement projects at Logan International Airport. The policy obligates RLI to cover, inter alia, an ongoing project known as Central Parking Garage Repairs and Expansion Project. In or about June 2004, after having told Massport it would cover the project, RLI expressly repudiated its coverage obligations under the Policy and informed Massport that it would not cover the project. The Policy also obligates RLI to cover, inter alia, two ongoing projects known as the International Gateway Terminal and Terminal Area Roadways Projects. After having told Massport it intended to continue covering these projects, RLI refuses to acknowledge its coverage obligations concerning them. Because of RLI's repudiation of and failure to acknowledge its coverage obligations, Massport has been forced to find alternative coverage under other policies, with different carriers, on considerably less favorable terms than the terms of the Policy, to Massport's considerable financial detriment.

Thus, these claims involve "breaches of contract..., fraud, misrepresentation, business torts or other violations involving business relationships (e.g. unfair competition)" and other "commercial claims, including those involving insurance [or] construction...which have complex factual or legal issues or are likely to require complex case management."

Categories BE.1 and BK.1.

**\* A Special Tracking Order shall be created by the Presiding Justice of the Business Litigation Session at the Initial Rule 16 Conference.**

**PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT**

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____   DATE: 4/6/05

AOTC-4 mkt005-11/99

I HEREBY ATTEST AND CERTIFY ON

MAY 6, 2005 , THAT THE

FOREGOING DOCUMENT IS A FULL, TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE IN MY OFFICE, AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____

ASSISTANT CLERK.

## COMMONWEALTH OF MASSACHUSETTS

**3**

SUFFOLK, SS.

SUPERIOR COURT
DEPARTMENT OF THE
TRIAL COURT

*Motion Allowed*

*Timothy Walsh*
*ASSC Clerk*

)
MASSACHUSETTS PORT AUTHORITY,    )
)
Plaintiff,    )
)
v.    )    CIVIL ACTION
)    NO.  05-1361
RLI CORPORATION,    )
RLI INSURANCE COMPANY,    )
)
Defendants.    )
)

## MOTION TO APPOINT SPECIAL PROCESS SERVER

Pursuant to Rule 4(c) of the Massachusetts Rules of Civil Procedure, plaintiff

Massachusetts Port Authority ("Massport") moves that a representative of Beacon

Hill Research & Service Group, Inc. ("Beacon Hill"), 314 Washington Street, Boston,

Massachusetts 02108, be appointed as special process server for all purposes in the

above-captioned matter. As grounds for this motion, Massport states that Beacon

Hill is qualified and knowledgeable in the service of court process. The undersigned

swears that to the best of his knowledge, the person to be so appointed is eighteen

years of age or over, and is not a party to this case.

WHEREFORE, Massport respectfully requests that this motion be allowed.

I HEREBY ATTEST AND CERTIFY ON

MAY 6, 2005 , THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY:
Dated: April 12, 2005
ASSISTANT CLERK

LITDOCS/595-19.1

**Massachusetts Port Authority,**

By its attorneys,

by n.m.

Beth I.Z. Boland, BBO #553654
Neil G. McGaraghan, BBO #649704
**BINGHAM MCCUTCHEN LLP**
150 Federal Street
Boston, Massachusetts 02110
(617) 951-8000

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true copy of the foregoing document to be served upon all parties, by hand, along with a copy of the summons and complaint on or about the date stated in the return of service of the summons and complaint.

Neil McGaraghan

-2-

*Notify*

**4**

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT
CIVIL ACTION
NO. 05-1361 BLS2
(Judge Burnes)

MASSACHUSETTS PORT AUTHORITY

**Notice sent
4/14/2005**

vs.

**B. I. Z. B.
N. Mc.**

RLI CORPORATION and RLI INSURANCE COMPANY

**B. Mc.**

NOTICE OF ACCEPTANCE INTO
BUSINESS LITIGATION SESSION

**(sc)**

This matter has been accepted into the Suffolk Business Litigation Session. It has been assigned to Judge Nonnie S. Burnes.

Hereafter, as shown above, all parties must include the initials "BLS2" at the end of the docket number on all filings. Also, Judge Burnes's name must be included.

Counsel for the plaintiff(s) is hereby advised that within seven (7) days of the filing of an appearance, answer, motion or other response to the complaint by or on behalf of the defendant(s) which has been served with process within the time limitation of Mass. R. Civ. P. Rule 4(j), or such other time as may be modified by the Court, he or she shall send notice thereof to Judge Burnes's Session Clerk, Courtroom 1017, Suffolk Superior Court, Three Pemberton Square, Boston, MA 02108.

Upon receipt of such notice, the Court will issue a Notice of Initial Rule 16 Conference for purposes of meeting with all counsel to plan for the litigation and resolution of this matter. If possible, the Court requests counsel for the plaintiff(s) to confer with counsel for the defendant(s) and to suggest to the Court a range of dates available for all parties for this purpose and to include those dates in the notice. The Court, however, retains the discretion to schedule the hearing at a time that fits within its own schedule.

DATED    April 13, 2005

Allan van Gestel, Presiding Justice
Business Litigation Session

I HEREBY ATTEST AND CERTIFY ON

MAY 6, 2005 , THAT THE

FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY:

ASSISTANT CLERK

# Commonwealth of Massachusetts

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. 05-1561

Massachusetts Port Authority _____ , Plaintiff(s)

v.

RLI Corporation _____ , Defendant(s)

## SUMMONS

To the above-named Defendant:

You are hereby summoned and required to serve upon Neil G. McGaraghan, Esquire, Bingham McCutchen LLP

plaintiff's attorney, whose address is 150 Federal Street, Boston, MA 02110 , an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Suzanne V. DelVecchio, Esquire, at Boston, the seventh day of April , in the year of our Lord two thousand five .

*Michael Joseph Donovan*

Clerk/Magistrate

NOTES
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.

2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED

(1) TORT    (2) MOTOR VEHICLE TORT    (3) CONTRACT    (4) EQUITABLE RELIEF    (5) OTHER

FORM CIV.P. 1 3rd Rev.

**I HEREBY ATTEST AND CERTIFY ON**

MAY 6, 2005 , **THAT THE**

**FOREGOING DOCUMENT IS A FULL, TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE IN MY OFFICE, AND IN MY LEGAL CUSTODY.**

**MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT**

BY: _____

ASSISTANT CLERK.

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

# Commonwealth of Massachusetts

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. 05-1361

Massachusetts Port Authority , Plaintiff(s)

v.

RLI Insurance Company , Defendant(s)

## SUMMONS

To the above-named Defendant:

You are hereby summoned and required to serve upon Neil G. McGaraghan, Esquire, Bingham McCutchen, LLP

plaintiff's attorney, whose address is 150 Federal Street, Boston, MA 02110 , an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Suzanne V. DelVecchio, Esquire, at Boston, the seventh day of April , in the year of our Lord two thousand five .

*Michael Joseph Donovan*

Clerk/Magistrate

NOTES
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.
3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED
   (1) TORT  (2) MOTOR VEHICLE TORT  (3) CONTRACT  (4) EQUITABLE RELIEF  (5) OTHER

FORM CIV.P. 1 3rd Rev.

**I HEREBY ATTEST AND CERTIFY ON**

MAY 6, 2005 , THAT THE

**FOREGOING DOCUMENT IS A FULL, TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE IN MY OFFICE, AND IN MY LEGAL CUSTODY.**

**MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT**

BY:

ASSISTANT CLERK.

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

**7**

## COMMONWEALTH OF MASSACHUSETTS

**SUFFOLK, SS.**

**SUPERIOR COURT
DEPARTMENT OF
THE TRIAL COURT**

| | |
|---|---|
| MASSACHUSETTS PORT AUTHORITY | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) CIVIL ACTION NO: 05-1361 |
| RLI CORPORATION | ) |
| RLI INSURANCE COMPANY, | ) |
| | ) |
| Defendants. | ) |

### STIPULATION EXTENDING TIME TO RESPOND TO COMPLAINT

Defendants RLI Corporation and RLI Insurance Company, and plaintiff

Massachusetts Port Authority, by their attorneys, stipulate and agree that the deadline by

which defendants must file a responsive pleading in this action shall be extended to and

include May 23, 2005.

This Stipulation is not intended to waive or compromise, and does not waive or

1

compromise, any defense to the Complaint that defendants have or may have.

Respectfully Submitted,

RLI CORPORATION AND RLI
INSURANCE COMPANY
By their attorneys,

Mark D. Cahill (BBO# 544693)
Michael P. Mullins
Christopher A. Edwards (BBO# 640758)
CHOATE, HALL & STEWART
Exchange Place, 53 State Street
Boston, MA 02109-2804
Tel: (617) 248-5000
Fax: (617) 248-4000
Attorneys for Defendants

Respectfully submitted,

MASSACHUSETTS PORT
AUTHORITY
By their attorneys,

w/ permission MPM

Beth I.Z. Boland (BBO# 553654)
Neil G. McGaraghan (BBO# 649704)
Bingham McCutchen, LLP
150 Federal Street
Boston, MA 02110
Tel: 617-951-8143
Fax: 617-428-6444
Attorneys for Plaintiff

I HEREBY ATTEST AND CERTIFY ON
MAY 6, 2005 , THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY:

ASSISTANT CLERK.

Dated: May 3, 2005

I HEREBY CERTIFY THAT A TRUE COPY OF
THE ABOVE DOCUMENT WAS SERVED
UPON THE ATTORNEY OF RECORD FOR
EACH OTHER PARTY BY MAIL/HAND ON:
EMAIL    5/3/05

2